Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

(Cancellation Nos. 92/045,687 and 92/046,943)

**OUTDOOR KIDS, INC.,**

*Appellant,*

**v.**

**PARRIS MANUFACTURING CO., INC.,**

*Appellee.*

———————————————

2009-1405

———————————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

———————————————

Decided: July 9, 2010

———————————————

JOANNA R. MENDOZA, Law Offices of Joanna R. Mendoza, PC, of Granite Bay, California, for appellant.

JONATHAN D. ROSE, Bradley Arant Boult Cummings LLP, of Nashville, Tennessee, for appellee.

———————————————

Before PROST, MAYER, and SCHALL, *Circuit Judges.*
SCHALL, *Circuit Judge.*

DECISION

Appellant Outdoor Kids, Inc. ("Outdoor Kids"), appeals the decision of the Trademark Trial and Appeal Board ("the Board") dismissing Outdoor Kids' petition for cancellation of appellee Parris Manufacturing Co.'s ("Parris") U.S. Trademark Registration No. 3,055,384 (the "'384 mark") for KID'S OUTDOORS words and design (the "KID'S OUTDOORS mark") for "clothing, namely, children's costumes, vests, shirts and caps" in International Class 25 and its U.S. Trademark Registration No. 3,055,385 (the "'385 mark") for the identical KID'S OUTDOORS mark for "toys, namely, toy guns, and toy hunting and fishing gear" in International Class 28. *Outdoor Kids, Inc. v. Parris Mfg. Co., Inc.*, Cancellations Nos. 92045687 and 92046943 (T.T.A.B. 2009). We *affirm*.

DISCUSSION

I.

Outdoor Kids is the holder of U.S. Trademark Registration No. 2,564,915 (the "'915 mark") for the word mark "OUTDOOR KIDS" (the "OUTDOOR KIDS mark") registered in International Classes 25 and 28. Outdoor Kids filed the application which matured into the '915 mark on January 9, 2003. Between February 1997 and May 2007, Outdoor Kids employed its OUTDOOR KIDS mark principally as a trade name or service mark for retail or online sales of products, with the majority of products sold by Outdoor Kids consisting of goods bearing third party marks. The OUTDOOR KIDS mark appeared only on UV swimsuits and water bottles.

Parris, a company which has manufactured toy firearms since the end of World War II, filed the applications

for its '384 and '385 marks on February 22, 2005. Parris' president, Craig A. Phillips, testified that it first used its mark for toy guns and toy hunting and fishing gear on June 23, 2004 and for children's costumes, vests, shirts, and caps on January 29, 2003.

Outdoor Kids learned of Parris' marks from the USPTO's database and subsequently filed Cancellation No. 92/045,687 seeking cancellation of the '384 mark. Outdoor Kids later filed Cancellation No. 92/046,943 seeking cancellation of the '385 mark. The two petitions were consolidated by the Board on March 6, 2007.

After determining that Outdoor Kids' '915 mark had priority, the Board turned to an analysis of whether a likelihood of confusion exists between the parties' marks. The Board began its analysis of the factors set forth in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357 (C.C.P.A. 1973), with the question of whether the OUTDOOR KIDS mark is famous, since whether a mark is famous plays a dominant role in the determination of likelihood of confusion. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1374 (Fed. Cir. 2005). The Board concluded that Outdoor Kids had failed to prove that its OUTDOOR KIDS mark is famous. *Outdoor Kids*, Cancellations Nos. 92045687 and 92046943, at 14.

Indeed, continued the Board, the Outdoor Kids mark is not only not famous, it is weak. The Board pointed to Outdoor Kids' amended application, in which, by submitting a disclaimer of "KIDS" and seeking and obtaining registration under 15 U.S.C § 1052(f), it admitted that the OUTDOOR KIDS mark is not an inherently distinctive mark and that the words are merely descriptive of its goods, with the word "KIDS" being generic. *See, e.g., Yamaha Intern. Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 1577 (Fed. Cir. 1988) ("[I]n cases where registration was initially sought on the basis of distinctiveness,

subsequent reliance by the applicant on Section 2(f) assumes that the mark has been shown or conceded to be merely descriptive."). Although the Board acknowledged that the OUTDOOR KIDS mark was entitled to a presumption of acquired distinctiveness, it found that any such acquired distinctiveness it possessed was minimal due to the descriptive and generic nature of the words employed. *Outdoor Kids*, Cancellations Nos. 92045687 and 92046943, at 18.

The Board then conducted a comparative analysis of the parties' marks, noting that Outdoor Kids' mark consists of the words OUTDOOR KIDS, whereas the Parris mark consists of the words KID'S OUTDOORS on a banner, placed over the design of an elk in profile contained within an oval. The Board noted that, although the words in a mark are generally accorded greater weight when analyzing the likelihood of confusion, when those words are highly descriptive or suggestive, the presence of a design may be a more significant factor. *See In re Hamilton Bank*, 222 U.S.P.Q. 174, 179 (T.T.A.B. 1984). Consequently, the Board considered the elk design element of Parris' mark to be a distinguishing feature. The Board found that in this case, where Outdoor Kids' mark is weak, and the word portion of Parris' mark is descriptive, the transposition of the words (and the differences in meaning resulting from that transposition) and the presence of the elk design are sufficient to distinguish the OUTDOOR KIDS mark from the KID'S OUTDOORS mark. *Outdoor Kids*, Cancellations Nos. 92045687 and 92046943, at 22.

Finally, the Board turned to the other relevant *DuPont* factors. In that regard, the Board observed that some of the goods identified in Outdoor Kids' registration are legally identical to those encompassed in Parris' registrations and that, consequently, travel in identical channels of trade to the same classes of customers. *Id.*

Furthermore, the Board noted, the goods in question are general consumer goods, purchased by the public at large. *Id.* Under those circumstances, the purchasers would likely not be sophisticated nor exercise great care in making purchasing decisions. *Id.* Although these latter *DuPont* factors weigh in favor of a determination that the marks would likely be confused, the Board nevertheless concluded that the weakness of the OUTDOOR KIDS mark and the distinguishing differences in the marks outweighed the factors favoring a likelihood of confusion. The Board accorded no probative weight to Outdoor Kids' testimony concerning actual confusion, finding it to be vague and not credible. *Id.* at 23-24.

## II.

We review the factual findings of the Board to determine whether they are supported by substantial evidence, upholding such findings if "a reasonable person might find that the evidentiary record supports the Board's conclusion." *The Cold War Museum, Inc. v. The Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009). In a trademark cancellation proceeding, "[e]ach of the *DuPont* factors presents a question of fact, findings with regard to which we test for substantial evidence when called into question on appeal." *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002). The Board's legal conclusions are reviewed de novo. *Cold War Museum*, 586 F.3d at 1356.

## III.

On appeal, Outdoor Kids does not dispute the factual findings of the Board. Rather, it maintains that the Board committed legal error in its weighing of the relevant *DuPont* factors when it determined that there was no likelihood of confusion between its mark and Parris' KID'S OUTDOORS mark. *See Kenner Parker Toys Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350, 355-56 (Fed. Cir.

1992) (Board erred as a matter of law in improperly weighing *DuPont* factors). Specifically, Outdoor Kids argues that the Board erred in giving little comparative weight to the similarity of the word marks, the similarity of the relevant goods, and the similarity of the trade channels in which the goods traveled.

Outdoor Kids contends that the Board should have focused primarily upon the words of the respective marks, instead of attaching significance to what it maintains is the irrelevant design element of Parris' mark. Outdoor Kids urges that, because Parris' KID'S OUTDOORS mark is simply a transposition of its own OUTDOORS KIDS mark, the average consumer is likely to confuse the terms, particularly in online purchasing. Outdoor Kids argues that the word transposition and the addition of the apostrophe in KID'S are irrelevant, as neither serves to create a different commercial impression or overall meaning.

Outdoor Kids, however, overlooks the Board's analysis of the weakness of the OUTDOOR KIDS mark. As seen, the Board pointed out that, during the course of prosecution, the Examining Attorney refused the application on grounds of descriptiveness, and also required a disclaimer of "KIDS" as merely a generic term for the goods. The mark was eventually registered under Section 2(f) of the Trademark Act, but the Board found that the acquired distinctiveness was still weak, given the highly descriptive, if not generic, term "OUTDOORS" and the failure of Outdoor Kids to provide substantial evidentiary support for the fame of its mark.

Furthermore, although it is recognized that the word portion of a mark is typically granted greater weight, the Board correctly noted that when the words at issue are highly descriptive or suggestive, or common in the trade, the presence of a design may be a more significant factor. *Hamilton Bank*, 222 U.S.P.Q. at 179. Indeed, there is no

*per se* rule that words must always predominate over design elements. *Parfum de Coeur Ltd. v. Lazarus*, 83 U.S.P.Q.2d 1012, 1016 (T.T.A.B. 2007). In this case, "OUTDOOR" is highly descriptive, and Outdoor Kids has acknowledged that "KIDS" is generic. We cannot, therefore, hold that the Board committed legal error in giving greater weight to the design element of Parris' mark in determining that there was little likelihood of confusion with Outdoor Kids' weak mark.

Outdoor Kids next makes the argument that, because the parties' respective goods are highly related and complementary and are sold through the same or similar channels of trade, the Board erred in not giving sufficient weight to this *DuPont* factor. However, the Board specifically addressed those issues in its analysis. The Board acknowledged that these issues militated in favor of a finding of likelihood of confusion, but held that these factors were outweighed by the weakness of the OUTDOOR KIDS mark and the distinguishing design elements of Parris' KID'S OUTDOORS mark.

Analysis of the *DuPont* factors constitutes a balancing test, with the weight of the various factors depending upon the circumstances of the individual case. *DuPont*, 177 U.S.P.Q. at 567; *see also Kellogg Co. v. Pack'em Enters., Inc.*, 951 F.2d 330, 333 (Fed. Cir. 1991). Indeed, even a single *DuPont* factor may be dispositive in a given case. *Id.* In this case, the Board determined that the weakness of the OUTDOOR KIDS mark and the distinguishing design characteristics of the KID'S OUTDOOR mark outweighed the other relevant *DuPont* factors and made confusion of Outdoor Kids' and Parris' marks unlikely. Upon reviewing the undisputed facts of this case, and the Board's ruling, we hold that the Board committed no legal error in finding that there is no likelihood of confusion between Outdoor Kids' OUTDOOR KIDS mark and Parris' KID'S OUTDOORS mark.

## IV.

For the foregoing reasons, the Board's dismissal of Outdoor Kids' petition for cancellation of Parris' '384 and '385 marks is affirmed.